STATE, Respondent v. OPHEIM, Appellant

(169 N.W.2d 716)

(File No. 10442.   Opinion filed July 29, 1969)

**Frank E. Denholm,** Brookings, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

HOMEYER, Judge.

The defendant, Marvin Opheim, was tried and convicted in the Circuit Court of Brookings County, South Dakota, of the crime of obtaining property under false pretenses. He now con-

tends he was denied his right to a speedy trial and his conviction should be reversed and the charge dismissed.

The offense occurred on January 7, 1963. A complaint was filed against the defendant, as Thomas E. Stanfield, the name appearing on the check, in February, 1963. On February 17, 1964, he was sentenced to a term of from one to ten years by the District Court of Lincoln County, Kansas, on a charge of forgery in the second degree. When notified by the FBI that Stanfield's true name was Marvin Opheim, a new complaint was filed under that name on February 26, 1964. The next day a warrant for his arrest was issued and a detainer filed with the warden of the Kansas State Penitentiary. On June 12, 1964, Opheim was sentenced to a term of from one to three years by the United States District Court for the District of Kansas on a charge of transportation in interstate commerce of a stolen motor vehicle, the sentence to run concurrently with the sentence he was then serving in the Kansas State Penitentiary. He was paroled from the latter on March 10, 1966, and then confined to the Federal Penitentiary at Leavenworth, Kansas, from that date to September 20, 1966.

It reasonably appears from the record that the defendant mailed a request for trial to South Dakota law enforcement officials in Brookings County shortly after his initial incarceration in Kansas; that he was advised by a letter from the state's attorney that he would not be then tried on the South Dakota charge; that after being so told he wrote the state's attorney by certified mail delivered September 3, 1964, asking for appointment of counsel to protect his rights. On June 12, 1965, he wrote to the Clerk of Courts of Brookings County inquiring as to disposition of his motion for immediate trial.[1]

Before February 10, 1966, Kansas authorities notified South Dakota officials that Opheim would be paroled on March 10, 1966, and they could take custody of him on that date under

---

1. Official records reveal no such motion at that time. However, at time of sentence defendant produced a cert'fied copy of a pro se "Motion for a Speedy Trial or in the Alternative, Dismissal of the Warrant" dated May 10, 1964 directed to the Brookings County District Court. At the same time he produced a certified copy of a similar motion dated May 5, 1966.

their detainer. South Dakota officials appear to have ignored such notice and Opheim was taken to Leavenworth where he remained until the expiration of his federal sentence on September 20, 1966. Thereafter the Sheriff of Brookings County took him into custody and he appeared in Municipal Court at Brookings on October 5, 1966, when bail was fixed and counsel appointed for him. A preliminary hearing was held on October 19th and he was bound over to circuit court. He was arraigned on October 31st and tried on December 8, 1966.

Opheim filed a pro se "Motion for a Speedy Trial, or in the Alternative, Dismissal of the Warrant" in the Municipal Court, Brookings, South Dakota, on August 8, 1966. The state's attorney filed an affidavit in opposition setting forth that Opheim was confined in the Federal Penitentiary at Leavenworth, Kansas, and a detainer had been filed against him at such institution; that his term would be completed and he would be released on September 20, 1966; that the next term of circuit court in Brookings County would convene on September 27, 1966, which would be the first term at which he could possible be tried. He asked that the motion be denied. On August 9, 1966, the Judge of the Municipal Court entered an Order denying the motion.

At the commencement of the trial, Opheim made an oral motion to dismiss on the ground that he had been denied a speedy trial and claimed prejudice because of the inability of a material witness to testify because he was deceased. The court denied the motion at that time, but stated it would be reconsidered after trial and the defendant was allowed ten days after completion of the trial to secure additional evidence to support his motion. The motion was renewed at the time of sentence on December 20, 1966 and again denied.

Every accused is guaranteed a speedy trial by the Sixth Amendment of the Constitution of the United States[2] and his right thereto is enforceable against the states by virtue of the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213,

---

2. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *". U. S. Constitution, Amendment VI.

87 S.Ct. 988, 18 L.Ed.2d 1. Likewise, under the Constitution of this state every accused within the jurisdiction of the state is entitled to a speedy public trial by an impartial jury of the county where the offense is alleged to have been committed.. Article VI, Section 7, Constitution of South Dakota. In addition to these federal and state constitutional rights an accused in this state has the statutory right to a prompt disposition of charges against him.[3]

In Smith v. Hooey, (January 20, 1969) 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607, the petitioner was incarcerated in the federal penitentiary at Leavenworth, Kansas, and although he made repeated requests to the State of Texas for a speedy trial, he was denied the same for more than six years. He then filed a motion in the trial court to dismiss the charge against him for want of prosecution. No action was taken on the motion. He then brought a mandamus proceeding in the Supreme Court of Texas asking for an order to show cause why the charge should not be dismissed. Mandamus was refused. The United States Supreme Court ruled: "Upon the petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the  *  *  *  court for trial."

By its decision in the Hooey case, the Supreme Court exploded the concept that when separate sovereignties are involved no duty devolves upon the prosecuting state to seek custody for trial. It is now established law that federal due process mandatorily requires when a prisoner makes demand for a speedy trial, the prosecuting state must make a diligent, good-faith effort to bring him to trial and absence from the state by incarceration elsewhere no longer constitutes good cause for delay.

In State v. Harrison, 83 S.D. 440, 160 N.W.2d 415, we held "where delay is caused by defendant's commission of a crime in another jurisdiction and he is convicted and imprisoned

---

3. SDCL 1967, § 23-34-1: "When a person has been held to answer for a public offense, if an indictment or information is not filed against him at the next term of the court at which he is held to answer, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown." See also SDCL 1967, § 23-34-2 et seq.

therein, such delay is caused by the prisoner's own act and not having made a demand for trial or taken any action to that end, he is not denied a speedy trial under either the South Dakota or United States Constitution." We there inferentially recognized in case of a demand for trial there might be a constitutional duty to bring an out-state prisoner to trial if demand was made. We believe the record here shows that Opheim for at least two years before he was taken into custody by a South Dakota sheriff demanded trial in this state and thus a constitutional duty rested with prosecuting officials to attempt to bring him to trial.

In the Hooey case, the majority opinion set aside the order of the Supreme Court of Texas refusing mandamus and remanded the case to that court for further proceedings not inconsistent with the opinion. The opinion and the three special concurrences therein indicate to us that a defendant who demands but does not receive an immediate trial is not ipso facto entitled to his discharge and there must be at least some showing of prejudice in addition to a lapse of time.

In United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, the court said:

"We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view

that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950. 'Whether delay in completing a prosecution  *   *   * amounts to an unconstitutional deprivation of rights depends upon the circumstances.  *   *   * The delay must not be purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393. '[T]he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 3 L.Ed.2d 1041."

We have in essence used and applied the language set forth above in several cases which have been before this court. See State v. Werner, 78 S.D. 562, 105 N.W.2d 668; State v. Violett, 79 S.D. 292, 111 N.W.2d 598; State v. Fogg, 79 S.D. 576, 115 N.W.2d 889. We also said in State v. Werner, supra: "It should be understood that the right to a speedy trial as granted by the constitution applies to every accused; a person restrained of his liberty by the same sovereign is not excepted from this right, Ex parte Schechtel, 103 Colo. 77, 82 P.2d 762, 118 A.L.R. 1032, and unreasonable delay may deny the state a trial on the merits."

We have carefully reviewed the record relative to the asserted unreasonable delay and claimed prejudice because of Opheim's belated trial on the merits. While we think the prosecuting officials under the rule now enunciated in Smith v. Hooey, supra, should have attempted to bring Opheim to trial after his demand therefor, nevertheless, under all the circumstances of the case at bar, including the length of the delay, the failure to show prejudice, or that the delay was purposeful, oppressive or improperly motivated, it is our opinion there was no deprivation of the constitutional right to a speedy trial and the conviction should stand.

Affirmed.

All the Judges concur.